### 132

Charles J. White
vs.
Providence Ice Co.

W.C.A.Pet.No.184

April 4, 1918

BARROWS, J. Heard on a petition for compensation.

We find paragraphs 3, 4, 9c, 12, 13 and 17 of the petition proved. We find the average weekly wage of petitioner to have been $17.50.

As to the eighth paragraph, petitioner testifies that while standing on a platform and with a pike pushing a cake of ice along a runway, the ice broke, the pike slipped and precipitated petitioner onto the runway. No witness saw petitioner just before his fall. Frank L. Murphy had been talking with petitioner five minutes before the accident and saw him as he fell, and immediately after the accident lying across the runway. The pike was found sticking up in the platform. From the position of the pike, respondent deduces that petitioner has not told the truth as to how the accident occurred.

Regardless of whether petitioner correctly described the manner of his injuries, the evidence fully warrants the finding that the accident arose out of and in the course of petitioner's employment, and we so find.

The only doubt in the case arises upon the defense set up by respondent that the accident occurred by reason of petitioner's intoxication while on duty.

It is undisputed that petitioner had a drink of whiskey at about 9:15 a. m., January 6, 1918. Petitioner and a fellow workman named Barker drank from a bottle containing whiskey. A bottle taken from the person of petitioner at the hospital is remembered by the doctor as a pint bottle. The evidence of Barker and Murphy, to whom petitioner had

### 133

previously offered a drink the same morning, satisfies us, however, that

the bottle was a half pint instead of a pint bottle. The testimony shows that Barker and petitioner together drank about two-thirds of this half pint. The accident happened about 10 o'clock a. m. Petitioner received a compound fracture of the right leg and lacerations of the scalp. Reeves says that Barker was intoxicated immediately after the accident. Reeves was in charge of Barker and did not order him to quit work on account of intoxication, and it is evident that Barker's intoxication, if noticeable, was slight. Petitioner claims to have taken his drink for a cold. He bought the bottle on the previous evening at a saloon. He was accustomed to drinking and estimates the quantity imbibed on the morning in question at perhaps one-quarter of a water glass. He disclaims any other drinking on the night before or the morning of the accident.

When petitioner reached the hospital at 10:45 a. m. there is no doubt that his breath smelled of whiskey and he was somewhat affected thereby. This appeared when he was being etherized. His fall had been such as to render him unconscious for a time and we believe that a part of his stupor at the hospital may hvae been due to the effect of the fall. We are inclined to believe that the internes at the hospital attributed his condition solely to the liquor, when a part of it was due to the severity of his fall, about which they had no information. Petitioner told the foreman, Mr. Reeves, just after his fall, that he took a dizzy spell and did not remember anything else. At this time, Reeves says, his talk was incoherent and Reeves did not notice his breath. The superintendent, Mr. Brennan, says the smell of whiskey was noticeable immediately after the accident, while the petitioner lay upon the floor in one of the buildings. At the hospital on the day after the accident, petition-

er, in giving the doctor the history of the case, said that he was trying to kick a cake of ice along with his foot and the leg was jammed between two cakes. Superintendent Brennan saw the petitioner when he went to work at 7:30 a. m. on the morning in question. At that time Mr. Brennan says that he observed no signs of liquor about petitioner and that he would not have been permitted to go to work if he had shown signs of intoxication. The witness who had the best opportunity to observe petitioner just prior to the accident was Murphy, above referred to. He was working within a few feet of petitioner just inside the icehouse, where as petitioner was just outside the house. Murphy saw petitioner falling. He did not see him using the pike. Murphy had been talking with petitioner within five minutes of the accident and at that time he observed no signs of intoxication in petitioner's actions or speech.

134

We do not believe that petitioner has accurately told about the using of the pike at the time of the accident. We suspect the liquor had somewhat fogged his brain but not to such an extent as to cause him by speech or action to show incapacity for the work he was doing. We cannot find that by reason of intoxication petitioner did anything which a normal person might not have done. The fact that petitioner was an habitual user of liquor renders it unlikely that the quantity taken by him at 9:15 o'clock would have so affected him as to make him intoxicated at 10 o'clock. We therefore find that respondent has not shown that the accident arose by reason of petitioner's intoxication while on duty.

Collins vs. Cole, 40 R. I. 66.

The petitioner is therefore entitled to compensation.

For Petitioner: P. M. O'Reilly and Jas. A. Lee.

For Respondent: Boss & Barnefield.